UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CONCO, INC. | ) | CASE NO.: 12-34933(1)(11) |
| | ) | |
| Debtor(s) | ) | |

### MEMORANDUM-OPINION

This matter came before the Court on the Expedited (1) Motion to Modify Subpoenas and (2) Motion for Protective Order of Debtor Conco, Inc. ("Debtor"). The Court considered the Motion of the Debtor, the Objection of Interested Party Conco Acquirement, LLC ("CAL"), as well as comments of counsel for Debtor, CAL, the Unsecured Creditors Committee ("UCC") and General Dynamics ("GD"). For the following reasons, the Court will **GRANT** the Motion.

The procedural background leading up to this Motion is set forth in both Conco's Motion and CAL's Objection. The Court will not restate matters other than what is relevant to the matter before the Court.

On October 20, 2014, the Debtor filed its Third Amended Plan of Reorganization. The hearing on confirmation of the Plan is scheduled for November 18, 2014.

The exclusivity period in which only the Debtor could file a Plan and solicit votes pursuant to 11 U.S.C. § 1121(b) expired on September 3, 2013. On July 28, 2014, the UCC filed the only competing Disclosure Statement and Plan.

On August 27, 2014, following a hearing, the Court denied approval of the UCC's Disclosure Statement. On September 10, 2014, the UCC withdrew its Disclosure Statement and Plan and began negotiations with Debtor regarding a plan of reorganization. These negotiations ultimately resulted

in the Debtor's Third Amended Plan which is currently pending before the Court for confirmation on November 18, 2014.

CAL is a limited liability corporation and the transferee of the claim of the T. J. Snow Company in the original amount of $6,771.66. (*See* Docket entry 297, May 13, 2014). CAL was apparently formed for the sole purpose of acquiring a claim against the Debtor in this bankruptcy. The primary and/or sole member of CAL is Jack Goldenberg, the controlling member of Delfasco, LLC, Debtor's primary competitor. Delfasco has been an active participant in negotiations with the UCC and has participated through counsel at scheduled hearings on a number of contested issues throughout this case.

On October 23, 2014, CAL, as the holder of the T. J. Snow Company claim, filed an Objection to Confirmation of Debtor's Third Amended Plan. In that Objection, CAL contested (i) the feasibility of the Plan, (ii) the Debtor's good faith, and (iii) argues that the Debtor's Plan does not represent the highest and best offer for the claims of creditors.

Following submission of the Objection, CAL served counsel for the Debtor, counsel for the UCC and counsel for GD with (a) notices of subpoenas to be served upon (i) Gilbert C. Everson; (ii) William J. Houston; and (iii) GD ; (b) notices of depositions of (i) the Debtor; and (ii) the UCC; and (c) requests for production of documents from (i) the Debtor and (ii) the UCC, via e-mail at approximately 10:00 p.m. EST on Friday, October 24, 2014.

The documents sought to be produced through the subpoenas are set forth at paragraphs 10 and 11 of Debtor's Motion. The parties sought to be deposed are Debtor's President, Mr. Everson and Debtor's turnaround consultant, Mr. Houston. CAL served Everson and Houston personally with subpoenas at their homes at approximately 10:00 p.m. on Saturday, October 25, 2014.

CAL also served subpoenas duces tecum on GD and UCC. The documents requested are set forth in paragraphs 12 and 14 of Debtor's Motion.[1]

CAL identified 12 topics to be examined in the deposition of Mr. Everson and 5 topics with Mr. Houston. The topics are set forth in paragraphs 15 and 16 of Debtor's Motion.

Through its Motion, Debtor seeks an Order modifying the subpoenas and entry of a protective order forbidding inquiry into matters concerning the various parties' negotiations leading up to the proposal of the Debtor's Third Amended Plan. Debtor contends that such settlement negotiations are privileged. Debtor also seeks to protect from disclosure, trade secrets and other confidential commercial information between Debtor and General Dynamics. Debtor also seeks an Order protecting it from annoyance, oppression and undue burden or expense.

The Court observes that CAL served its subpoenas personally on Everson and Houston at their homes at 10 p.m. on a Saturday evening, October 25, 2014. CAL did not submit evidence or argue that it was unable to serve these subpoenas upon Everson and/or Houston during normal business hours. CAL should be aware that both men are working daily on Debtor's reorganization and preparing for the November 18, 2014 confirmation hearing. Absent any credible explanation for such aggressive service, the Court can only conclude that CAL's actions were calculated to annoy and harass the witnesses.

Under Federal Rule of Civil Procedure 26(b)(1), parties may discover any matter not privileged and that is relevant to the claim or defense of any party. Although relevant information need not be admissible at trial, it must be reasonably calculated to lead to the discovery of

---

[1] Both GD and UCC reached agreements with CAL regarding the subpoenas and documents to be produced pursuant to those subpoenas.

admissible evidence. *In re No-Burn Inc. v. Speller*, 2006 WL 4458703 (Bankr. M.D. N.C. 2006). Although there is no pending adversary proceeding involving claims or defenses, Debtor seeks protection from the subpoenas limiting the discovery to matters relevant to CAL's Objection to Confirmation of the Debtor's Third Amended Plan.

The topics that CAL proposes to examine Houston and Everson upon are far beyond the scope of the matters raised in its Objection to the Plan. Rather the deposition seeks to inquire into the facts behind the failure of the Debtor and/or UCC to accept CAL's unsigned proposals providing competition for the Debtor's Plan and further what the Debtor did or did not do to acquire the consent of GD to the assignment of its executory contracts to Delfasco and/or CAL in a plan. CAL contends that it is trying to prove that Debtor did not propose the Third Amended Plan in good faith because (a) Debtor and GD cooperated toward the mutual goal of frustrating CAL's acquisition of the Debtor's assets and (b) cooperated to deny assumption and assignment of the GD's contracts with Debtor absent GD's consent. CAL contends that its offer to acquire the Debtor's assets will result in a higher payment to unsecured creditors and this Court must determine that the failure of GD to approve CAL's assumption of the contract is unenforceable as a matter of law which it raised through a companion Motion for Declaration of Rights.[2] The simple and obvious impediment to CAL's requested discovery and litigation strategy is that it did not file a competing Plan, nor has it ever submitted a written signed offer to the Debtor.

CAL's Objection to the Plan, to the extent it requires the Court to analyze its competing offer, is a nullity because it failed to file a Disclosure Statement and Plan when it had the right to do so.

---

[2]This Motion is the subject of a separate Memorandum-Opinion and Order.

-4-

Additionally, the negotiations between the UCC and Debtor are privileged because the matters upon which CAL seeks to inquire relate to statements made in furtherance of settlement. *See, Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976 (6th Cir. 2003). While there are exceptions to *Goodyear*, they are not applicable here. CAL had been in negotiations with UCC in order to propose a competing Plan. The UCC tried to formulate a Plan of its own and work with CAL toward this goal. However, UCC determined that CAL's proposal had too many contingencies rendering it far too speculative for the unsecured creditors. The efforts of the UCC and the reasons why it decided to work with the Debtor are set forth in detail in the Affidavit of Brian Schmidt, Chairman of the UCC, dkt. #440. Among its reasons, the requirement that the UCC bear the risk of any litigation with GD resulting from any assumption/assignment of the GD contracts, as well as terms allowing CAL and Delfasco to "walk away" from the Offer by forfeiting its deposit, and "Permitted Termination Events" in the Offer.

Any examination into the areas set forth by CAL in its subpoenas relating to CAL's nonexisting Plan or binding offer for the Debtor's stock or assets is beyond the scope of what is relevant to its Objection to the Third Amended Plan. The UCC set forth at length at the hearing a number of reasons why it chose to withdraw its Plan and work with the Debtor, which resulted in the Third Amended Plan. While CAL contends the Debtor has a fiduciary duty to investigate any higher and better offers, there simply are none before the Court. The UCC was very clear that there were too many contingencies in CAL's proposal that made its offer speculative and therefore it dropped the matter. In the Committee's considered business judgment, the Debtor's Third Amended Plan is the best offer for the unsecured creditors of this estate.

General Dynamics, Debtor's largest customer, also made clear in its filings and at the hearing that it will not do business with Delfasco and/or CAL. If a plan were proposed whereby the Debtor would issue its stock to CAL through a Plan of Reorganization, GD would terminate the contracts pursuant to terms within the contracts or what it called "terms of convenience clauses".[3] The Debtor and UCC believe that the Debtor's business is more valuable as a going concern and with the General Dynamic contracts in place. These contracts are vital to Debtor's economic success, even if short-lived, and it is in the best interest of the creditors that these contracts remain in effect or at least until this Court hears the evidence at the confirmation hearing.

In that Debtor's Third Amendment Plan to assume and complete the GD contracts is agreeable to GD, CAL's frustration over not being permitted to buy those contracts through a Plan that has not even been proposed is not a justiciable controversy. Further, CAL is prohibited by the settlement doctrine from inquiring into the reasons that Debtor and the UCC resolved their differences. Those reasons are not relevant to CAL's Objection to Confirmation of the Debtor's Third Amended Plan and simply constitutes a "fishing expedition" and calculated to force the Debtor and UCC's agreement to CAL's demands.

CAL's areas of inquiry for the deposition also do not tend to prove or disprove whether the Third Amended Plan complies with 11 U.S.C. § 1129(a)(7)(A)(ii). That statute requires that any such plan yield a greater recovery than a hypothetical chapter 7 liquidation. CAL contends that its "60% offer in cash is far higher than the best-case scenario under the Debtor's Third Amended Plan of a 40% distribution over four years plus its speculative contingent distribution" and that it would

---

[3] CAL contended at the hearing that it could not evaluate the Debtor's Third Amended Plan because it had not even seen the GD contracts at issue. This obstacle no longer exists since GD agreed to produce the contracts with confidential pricing information redacted.

-6-

make the same offer to a Chapter 7 Trustee.  Again, there is no signed offer by CAL of record and no competing Plan before the Court for consideration.  Further, simply arguing an unenforceable proposal to fund 60% of unsecured claims does not satisfy the Debtor and UCC's duty to secure a "better" offer.  Higher and better are not necessarily synonymous in a Chapter 11 reorganization.  Therefore, this cannot be relevant to CAL's Objection to the Third Amended Plan which is up for confirmation on November 18, 2014.

Entry of a protective order does not prohibit CAL from taking a deposition before or participating at the November 18, 2014, confirmation hearing as any holder of an unsecured claim is permitted.  It is not permitted, however, to use the deposition to explore confidential settlement negotiations or create a platform to argue for an unenforceable offer that is not properly before the Court.  CAL and its related entity Delfasco have been involved in negotiations with the UCC for over a year.  It will not be prejudiced in contesting the Plan at the hearing by virtue of its extensive knowledge of Debtor's operations.

## CONCLUSION

Based upon the above reasons, the Court will **GRANT** the Expedited (1) Motion to Modify Subpoena and (2) Motion for Protective Order of Debtor Conco Acquirement, LLC.  An Order accompanies this Memorandum-Opinion.

*/s/ Joan A. Lloyd*
Joan A. Lloyd
United States Bankruptcy Judge
Dated: November 12, 2014

# UNITED STATES BANKRUPTCY COURT
# FOR THE
# WESTERN DISTRICT OF KENTUCKY

IN RE:                              )
                                    )
CONCO, INC.                         )    CASE NO.: 12-34933(1)(11)
                                    )
                    Debtor(s)       )

### ORDER GRANTING EXPEDITED (1) MOTION TO MODIFY SUBPOENAS, AND (2) MOTION FOR PROTECTIVE ORDER

This matter came before the Court for an expedited hearing on the Debtor's Expedited (1) Motion to Modify Subpoenas, and (2) Motion for Protective Order (the "Motion"). Due and adequate notice of the Motion and hearing having been given under the circumstances, the Court having considered the Motion and statements of counsel for the parties at the hearing, and good cause appearing therefor;

**IT IS HEREBY ORDERED** that the Motion is **GRANTED**.

**NOW, THEREFORE, IT IS ORDERED** that the Subpoenas[1] are modified to reflect that the subject of each Subpoena shall produce only the following documents:

A. Everson Subpoena

   (1) All documents and communications by, between and among the Debtor, Committee, General Dynamics, you and the Lender relating to the Enabling Loan.

B. Houston Subpoena

   (1) All documents and communication by, between and among the Debtor, Committee, General Dynamics, the Lender and you relating to the Enabling Loan.

---

[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed in the Motion.

C. General Dynamics Subpoena

(1) All documents and communications by, between and among the Debtor, the Committee and you relating to the Enabling Loan.

**AND IT IS FURTHER ORDERED** that, in order to protect the Debtor from annoyance, oppression, and undue burden or expense, the Debtor shall produce only those documents responsive to the following request for production from the Debtor RPDs:

(1) All documents and communications by, between and among the Debtor, Committee and General Dynamics and the Lender relating to the Enabling Loan.

**AND IT IS FURTHER ORDERED** that, in order to protect the Debtor from annoyance, oppression, and undue burden or expense, areas of inquiry pursued by Acquirement at the depositions conducted pursuant to the Debtor Notice and Subpoenas identified below shall be limited to the following subjects:

A. Everson Subpoena/Debtor Notice

(1) The Debtor Plan.

(2) The financial projections of the Debtor contained in Exhibit E to *the Third Amended Disclosure Statement Regarding the Debtor's Second Amended Plan of Reorganization* [D.I. 389] (the "Forecasts").

(3) The basis for, and assumptions, underlying the Forecasts.

(4) The effect, if any, on the completion of the GD Contracts on the Debtor or on its ability to make the projected distributions proposed in the Debtor Plan.

(5) The Debtor's cash position and its ability to fund the required payments under the Debtor Plan for such plan to become effective.

(6) The Enabling Loan, including the person or entity providing the Enabling Loan and the terms and conditions thereof.

B. <u>Houston Subpoena</u>

(1) The Debtor Plan.

(2) The financial projections of the Debtor contained in <u>Exhibit E</u> to *the Third Amended Disclosure Statement Regarding the Debtor's Second Amended Plan of Reorganization* [D.I. 389] (the "<u>Forecasts</u>").

(3) The basis for, and assumptions, underlying the Forecasts.

(4) The Enabling Loan, including the person or entity providing the Enabling Loan and the terms and conditions thereof.

(5) The effect, if any, on the completion of the GD Contracts on the Debtor or on its ability to make the projected distributions proposed in the Debtor Plan.

**AND IT IS FURTHER ORDERED** that, in order to protect the Debtor from annoyance, oppression, and undue burden or expense, Acquirement is forbidden from inquiry into the matters identified as deposition topics in the General Dynamics Subpoena and the Committee Notice.

**AND IT IS FINALLY ORDERED** that, in order to protect the Debtor from annoyance, oppression, and undue burden or expense, any deposition taken by Acquirement pursuant to the Subpoenas, the Debtor Notice, and the Committee Notice shall be limited to a maximum of four (4) hours each.[2]

**SO ORDERED**.

Joan A. Lloyd
United States Bankruptcy Judge
Dated: November 12, 2014

---

[2] For purposes of this Order, the deposition of Mr. Everson, individually and as representative of the Debtor pursuant to the Debtor Notice, shall be consolidated and subject to a single four-hour limit.