# UNITED STATES BANKRUPTCY COURT
# FOR THE
# WESTERN DISTRICT OF KENTUCKY

IN RE: )
)
CONCO, INC. ) CASE NO.: 12-34933(1)(11)
)
Debtor(s) )

## MEMORANDUM-OPINION

This matter is before the Court on the Motion of the Oversight Committee ("Oversight Committee") to Enforce the Order Confirming Debtor's Third Amended Plan of Reorganization and the Debtor's Third Amended Plan of Reorganization by Prohibiting the Sale of Class 4-Equity Security Interests (Dkt. 512) ("Motion to Enforce Order Confirming Third Amended Plan") and the Motion of the Trustees of the Conco, Inc. ("Trustees") Employee Stock Ownership Plan and Trust Agreement ("ESOP") to Seek Clarification of the Order Confirming Debtor's Third Amended Plan of Reorganization and Clarification of the Debtor's Third Amended Plan of Reorganization and a Declaration of Rights Therein (Dkt. 516) ("Motion for Clarification and Declaration of Rights"). The Court considered both Motions, the Responses, Objections and Supplemental Objections thereto filed by Delfasco, LLC, a Delaware limited liability company ("Delfasco"), Conco Acquirement, LLC, a Delaware limited liability company, an affiliate of Delfasco and a creditor herein ("Conco Acquirement"), Debtor Conco, Inc. ("Debtor"), Interested Parties Tom Harper, Sandra Krumma, Peggy Leake, Zane Leake and Jon Souder, participants in the Conco, Inc. ESOP ("Interested Parties") as well as the comments of counsel for all parties at the hearing held on the matters. For the following reasons, the Court will **GRANT** both Motions.

**PROCEDURAL BACKGROUND**

On November 5, 2012, Debtor filed a Voluntary Petition seeking relief under Chapter 11 of the United States Bankruptcy Code.

On November 27, 2012, the United States Trustee filed a Notice of Appointment of Unsecured Creditors Committee ("UCC").

During the course of the Chapter 11 proceeding, Conco's main competitor, Delfasco, attempted to acquire Debtor and gain control of the Debtor's estate. Delfasco's intentions regarding the Debtor were manifested through negotiations with the UCC and when that was unsuccessful, through litigation maneuvers. Ultimately, to secure standing to assert itself in the case, Delfasco purchased a nominal claim in order to become a creditor in the Chapter 11 proceeding. Debtor speculated that Delfasco's efforts were designed to thwart any efforts of the Debtor to reorganize, thus eliminating a main rival in the marketplace.

Delfasco's efforts were opposed by the Debtor and Debtor's main customers, General Dynamics and the United States Department of the Army, both of whom declared they would terminate their contracts with Debtor in the event Delfasco was successful in taking control of Debtor. Without these contracts, Debtor would be forced to terminate its business operations. After extensive arm's length negotiations with Debtor, General Dynamics, the UCC and Delfasco, the UCC determined it was in the best interest of the creditor body to reject Delfasco's efforts to purchase control of the Debtor. These negotiations resulted in the UCC supporting the Debtor's First Proposed Plan of Reorganization. The UCC at one point even filed a competing Plan, but ultimately came to support the Debtor's Amended Plan because it guaranteed general unsecured creditors a higher guaranteed recovery than if Delfasco gained control of the Debtor. It can be fairly

stated that alternatives to and the Plan as confirmed were thoroughly tested and negotiated by the above referenced parties.

The Debtor's Third Amended Plan (hereinafter "Amended Plan"), confirmed by the Court on November 20, 2014, provides Class 3 (i) Defined Distributions - general unsecured claim holders approximately $4,848,391, which equates to approximately 40 cents on the dollar for their claims; and (ii) Contingent Distributions representing each holder's pro rata share of 50% of Debtor's "annual net operating profit before depreciation" over the amount projected by Debtor in the forecast years 2015 to 2018. The distributions are to be made between confirmation of the Amended Plan through December 31, 2018. At present, $2,850,846.29 in Defined Distributions have been paid to Class 3 general unsecured claimants with $1,997,544.71 and any Contingent Distributions remaining to be paid.

The Amended Plan also provides that the ESOP would hold all of the equity interest in the Debtor until December 31, 2018, when the last Defined Distributions are scheduled to be made and the last Contingent Distributions would have been calculated. The provision of the Amended Plan at issue for the matters at bar states:

> [O]n the Effective Date holders of equity securities in the Debtor shall retain their interests as in existence immediately prior to the Effective Date. Between Confirmation and the Effective Date, the ESOP shall be amended to provide that the Debtor may not contribute money or any other property to the ESOP, nor repurchase any employee-owned equity securities through December 31, 2018, to the extent allowed by applicable law.

Amended Plan, Art. V.

Delfasco objected to the Amended Plan, conducted extensive discovery, was present for and litigated its Objection to confirmation of the Amended Plan. On November 20, 2014, the Court

-3-

entered the Confirmation Order confirming the Amended Plan overruling all of the remaining objections of Delfasco that had not yet been denied or withdrawn.

On April 28, 2015, Delfasco made an offer to the Debtor and the ESOP to purchase the Equity Interests for $2,040,000.  The Debtor and the ESOP ultimately rejected the offer.

On June 15, 2015, Delfasco renewed its offer to purchase the Equity Interests, an offer which remained open until the end of November 2015.  This offer was also rejected.

On July 1, 2015, the Interested Parties, participants in the ESOP, filed a Complaint in the United States District Court for the Western District of Kentucky alleging, among other things, that Debtor's managers and Trustees of the ESOP breached their fiduciary duties by failing to properly consider Delfasco's offers to purchase the Equity Interests.  The District Court denied efforts by the Defendants to remove the litigation to the bankruptcy court, contending it could answer the issues in the Complaint without interpreting terms of the Amended Plan, a matter under the jurisdiction of this Court.

On December 11, 2015, the District Court also denied the Interested Parties' Motion to Withdraw the Reference from the Bankruptcy Court with respect to the Oversight Committee's Motion to Enforce and the ESOP Trustee's Motion to Clarify.  In its Order, the District Court noted that the Amended Plan classified the Conco stock as "Class IV interest" consisting of "all interest in the Debtor."  All 5,100 equity securities in the Debtor are held by the ESOP.  The Court denied the Motion and rejected the Interested Parties' claims that any interpretation of the Amended Plan's provisions would conflict with ERISA's anti-alienation provision, 29 U.S.C. § 1056(d)(1).  The Court stated, "the corpus of a trust - - here, the Conco stock held by the ESOP - - is not the subject of ERISA's anti-alienation provision," citing *O'Toole v. Arlington Trust Co.*, 681 F.2d 94, 96 (1st

Cir. 1982).  The prohibition is directed at benefits provided, not the trust corpus.  *Id.*  Therefore, there was no merit to the Interested Parties' claims because this Court need not consider ERISA in ruling on the motions presently before the Court.

At the hearing held on December 11, 2015 before this Court on the two pending motions, the Interested Parties argued that the matters were not ripe for decision and would result in this Court issuing an advisory opinion and would require the Court to interpret ERISA, a matter solely within the jurisdiction of the District Court.  The District Court's ruling denying the Motion to Withdraw the Reference, however, made clear that any interpretation of ERISA was not necessary for this Court's interpretation of the Amended Plan.

The Interested Parties contended that the matter was not ripe because the Trustees had rejected Delfasco's offer to purchase the Equity Interests.  However, two days after the December 11, 2015 hearing, the Debtor notified the Court that Delfasco had served a new offer to acquire the capital stock of the Debtor which is conditioned upon the entry of a final and non-appealable order of the United States Bankruptcy Court for the Western District of Kentucky declaring that the seller has the right to consummate the transaction.  Therefore, this new offer and its conditions moot any ripeness argument relied upon by the Interested Parties and Delfasco.  Therefore, the Court will consider the issues before it in the two pending motions.

## LEGAL ANALYSIS

The Amended Plan at Article X §§ b., m., and o., set forth that this Court retains jurisdiction to enforce the terms of the Amended Plan and the Confirmation Order.  This Court's authority to retain jurisdiction with respect to all matters related to interpretation of the Amended Plan was

recognized by the District Court in its Order on October 22, 2015, as well as 11 U.S.C. §§ 1141, 1142 and Rule 3020(d) of the Federal Rules of Bankruptcy Procedure.

The source of any bankruptcy court's jurisdiction is 28 U.S.C. §§ 1334 and 157. Under § 1334, district courts have jurisdiction over "cases under Title 11," and proceedings "arising under," "arising in a case under," or "related to a case under" Title 11. *See* 28 U.S.C. § 1334(a) and (b). District Courts routinely refer this jurisdiction over bankruptcy cases and proceedings to bankruptcy courts. 28 U.S.C. § 157(a). In determining whether a matter is within the bankruptcy court's jurisdiction, "it is necessary only to determine whether [the] matter is at least 'related to' the bankruptcy." *In re Wolverine Radio Co.*, 930 F.2d 1132, 1141 (6th Cir. 1991).

In determining the meaning of "related" proceedings, the Sixth Circuit has adopted the definition crafted in the Third Circuit Court of Appeals case, *In re Pacor*, 743 F.2d 984 (3d Cir. 1984); *In re Dow Corning Corp.*, 86 F.3d 482, 489 (6th Cir. 1996). That is, if "the outcome of the proceeding could conceivably have any affect on the estate being administered in bankruptcy, the matter is related to" the underlying bankruptcy case. *Pacor*, 743 F.2d at 994. An action is "related to the bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate." *Id.*

If jurisdiction exists under 11 U.S.C. § 1334, courts may "give effect to retention of jurisdiction provisions in a confirmed plan." *In re Resorts, Int.'l Inc.*, 372 F.3d 154, 161 (3d Cir. 2004). At least one court has stated that it is difficult to imagine a closer nexus to the Debtor's bankruptcy case and confirmed Plan, as in this case, where direct requests for interpretation and clarification of the Plan's terms is at issue. *In re Thickstun Bros. Equipment Co. Inc.*, 344 B.R. 515

(B.A.P. 6th Cir. 2006).  The relief sought by the Oversight Committee and the Trustees fits within these parameters and this Court has jurisdiction to interpret the terms of the confirmed Amended Plan.

 Having concluded that the matters before the Court are ripe for determination and that the Court has jurisdiction to interpret and enforce the terms of the confirmed Plan, the Court now turns to the provisions of Article V of the Amended Plan.

 The Oversight Committee contends that this provision in the Amended Plan prohibits the sale of any Equity Interests until after January 1, 2019.  Delfasco contends that under this provision the only party prohibited from purchasing the Equity Interests under the Amended Plan is the Debtor itself.  Instead, Delfasco contends this provision "merely ensures that the Debtor will use all of its available cash to fund its obligations under the Amended Plan, rather than pay ESOP benefits."  *See* Objection of Delfasco and Conco Acquirement to Motion of Oversight Committee to Enforce and Motion of Trustees' for Declaration of Rights, at p. 8.

 Delfasco's interpretation of Article V misses the essential bargain struck by the parties to the Amended Plan.  The four corners of the document evidence the parties intent and agreement for the ESOP holders and the Equity Interest holders to maintain their stock position until completion of the Amended Plan.  The "elephant in the room" in this provision is that the ESOP and the Interested Parties were permitted to retain their stock.  As a matter of law, impaired unsecured creditors were entitled to insist through objection to the Amended Plan that the ESOP and the Interested Parties, as interests junior to the unsecured class, receive or retain <u>nothing</u> under the Plan.  (*See* 11 U.S.C. § 1129(b)(2)(B)).  This includes any stock in the Debtor.  Retention of the stock was a concession to stockholders by the UCC on behalf of its class in return for no distributions or transfers of that

stock until December 31, 2018. This nuance of black letter Bankruptcy law was not and indeed did not need to be included in the text since it is basic to the practice. The *quid pro quo* was the Debtor, the ESOP and the Interested Parties would keep control and their ownership interests with NO distributions and NO transfers of ownership in return for the UCC's support of the Amended Plan terms. This bargained for exchange involved concrete consideration to hold the parties to their deal.

Once a Chapter 11 plan is confirmed, the plan operates similar to a contract between the reorganized debtor and its creditors. *In re Troutman Enterprises, Inc.*, 244 B.R. 106 (Bankr. S.D. Ohio 2000). Disputes over the meaning of a confirmed plan are settled by state contract law. *In re Arbors of Houston Assoc. Ltd. Partnership*, 172 F.3d 47 (6th Cir. 1999) (unpublished table decision); *Hillis Motors, Inc. v. Hawaii Auto Dealers Ass'n.*, 997 F.2d 581, 588 (9th Cir. 1993). Under Kentucky law, the primary objective when interpreting a contract is to effectuate the parties' intent. *3D Enterprises Contracting Corp. v. Louisville and Jefferson County Metropolitan Sewer Dist.*, 174 S.W.3d 440 (Ky. 2005). When no ambiguity exists, the Court need only look as far as the four corners of the document to determine the parties' intent. *Hoheimer v. Hoheimer*, 30 S.W.3d 176, 178 (Ky. 2000). Here, the parties' intent is evident in the Amended Plan. That intent was for the equity interests to remain as they stood at confirmation until the Amended Plan is completed. It is also evidenced by the UCC's abandonment of its objection per the Absolute Priority Rule to the Interested Parties retention of stock. Indeed, but for this agreement at confirmation, the Amended Plan would have failed and the Debtor terminated operations. The current value of the Interested Parties' stock is directly correlated to their retention of their interests, the UCC's reliance on the terms of the Amended Plan and the Debtor's post-confirmation operation.

This Court is familiar with the legal maneuvering by the parties that lead up to the ultimate confirmation of the Amended Plan. For an accurate recitation of those events, see Debtor's Response to the Committee's Motion to Enforce Order Confirming Third Amended Plan, pp.1-5. As a result of the negotiations by the parties, the UCC decided that Debtor's Amended Plan was the best offer for the unsecured creditors of this bankruptcy estate. The UCC had submitted a competing Plan, investigated Conco Acquirements' purchase offer and concluded the offer was far too speculative and that the Amended Plan was in the best interest of the unsecured creditors of the estate. The UCC advised the Court that the impetus for this conclusion and ultimately support for the Debtor's Amended Plan was to keep General Dynamics and the Department of the Army as customers of the Debtor. The parties, except for Delfasco, advised the Court that the estate had far more value and chance for successfully reorganizing and paying its creditors as an operating, going concern. This acknowledgment was the basis for the parties' acceptance of the Amended Plan which included the restrictions on their claims and interests. This is reflected in Article VIII, Means for Implementation of the Plan, which states:

> Upon the effective date, the Debtor will retain all property of its estate and continue to use it in the operation of its manufacturing business.

Simply put, if Delfasco is successful in its attempts to purchase the Equity Interests of the Debtor before completion of the repayment terms of the Amended Plan, General Dynamics and the Department of the Army will cease business with Debtor and Debtor will no longer be able to continue in business. Further, the Amended Plan will fail and the creditors of the estate will not get paid as provided through their negotiations and agreement to the Amended Plan. The UCC placed its bet on a reorganized Debtor versus a speculative payout promised by the Debtor's competitor.

It is also important to note that at the outset of the confirmation process, the Debtor's equity holders, who were aware of the Bankruptcy proceedings, possessed shares in the ESOP which had no value. Unless the Debtor was able to continue as a going concern, Debtor would close and the Interested Parties' stock (ESOP) would be worthless. It was only through negotiations of the parties and the diligent work of the UCC that more value was realized by the estate and thus, to the Equity Interests' holders' benefit, through rejection of Delfasco's efforts to purchase the Debtor. If Delfasco is allowed to defeat the Amended Plan by either the purchase of the Equity Interests or to drain the estate and the ESOP's resources through protracted litigation, Delfasco will benefit to the detriment of the creditors and the Debtor, who will lose the benefit of the bargain that the parties fought so hard to achieve. That benefit is to accept payments through the Amended Plan and for the ESOP to receive nothing until December 31, 2018. As Delfasco is Debtor's direct competitor, the purchase of the Equity Interests gives it opportunity and incentive to impair the Debtor's reorganization.

The Debtor correctly points out that the provisions of a confirmed plan bind "the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan." 11 U.S.C. § 1141(a). Furthermore, under 11 U.S.C. §1142(b)(2), this Court may direct "the Debtor and any other necessary party" to perform any other act, necessary for the consummation of the Plan.

The Court must enter the relief requested by the Debtor, the Oversight Committee and the Trustees of the ESOP in order to protect the rights of all parties which were bargained for in the

-10-

Amended Plan.  The ESOP specifically was allowed to retain its interests so long as those interests could not be sold and no distributions were made to the participants until the Amended Plan is completed.  The UCC gave up its right to object on the basis of, among other things, the Absolute Priority Rule in consideration of this covenant.  Similarly, General Dynamics waived its right to pursue its claim to rejection damages against the Debtor conditioned upon the rejection of the unsigned offers of Delfasco.  These are the bargained for exchanges the parties made in reliance upon faithful performance under the Amended Plan.  The efforts Delfasco is now undertaking to purchase the Equity Interests of the Debtor are nothing more than an attempt to acquire and/or relitigate matters already determined during the Plan confirmation process.  For these reasons, the Court will **GRANT** the relief requested by the Oversight Committee and the ESOP Trustees.

## CONCLUSION

For all of the above reasons, the Court will **GRANT** the Motion of the Oversight Committee to Enforce the Order Confirming the Third Amended Plan and the Motion of the ESOP Trustees for Clarification and Declaration of Rights.  An Order incorporating the findings herein accompanies this Memorandum-Opinion.

_____
Joan A. Lloyd
United States Bankruptcy Judge
Dated:  February 18, 2016

UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

IN RE:                                )
                                      )
CONCO, INC.                           )    CASE NO.: 12-34933(1)(11)
                                      )
                 Debtor(s)            )

### ORDER

Pursuant to the Memorandum-Opinion entered this date and incorporated herein by reference,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the Motion of the Oversight Committee to Enforce the Order Confirming Debtor's Third Amended Plan of Reorganization and the Debtor's Third Amended Plan of Reorganization by Prohibiting the Sale of Class 4 Equity Security Interests and the Motion of the Trustees of Conco ESOP to Seek Clarification of the Order Confirming Debtor's Third Amended Plan and Clarification of Amended Plan and Declaration of Rights Therein, be and hereby is, **GRANTED**.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that the holders of Class 4 Equity Security Interests of Conco, Inc. under the Debtor's Third Amended Plan of Reorganization are hereby enjoined from selling, transferring or otherwise divesting themselves of the Equity Interests of Conco, Inc. until January 1, 2019.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that the Court reserves ruling on any requests for sanctions and/or damages upon further motion by the parties.

_____
Joan A. Lloyd
United States Bankruptcy Judge
Dated: February 18, 2016